UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 20-21095-CIV-MORENO

SWISS BRAND LIMITED, INC.,

        Plaintiff,

vs.

WENGER S.A.,

        Defendant.
_____/

## ORDER DENYING MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant, Wenger S.A.'s "Motion and Supporting Memorandum to Dismiss[,] No Case or Controversy" **(D.E. 6)**, filed on **July 28, 2020**. In this case, the Plaintiff, Swiss Brand Limited, Inc., filed a one-count Complaint for Declaratory Judgment, seeking a declaration that it has a right to use its marks and that its continued use of its marks is not likely to cause confusion, mistake or deception. The Defendant, Wenger S.A., now moves to dismiss, maintaining that Swiss Brand has failed to satisfy the case or controversy requirement. After careful consideration of all the circumstances, the Court finds that the facts alleged show that there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citations omitted). Accordingly, the Court denies Wenger's motion.

### I.      BACKGROUND

According to the Complaint for Declaratory Judgment, this case arises from a dispute between Swiss Brand Limited, Inc., a manufacturer and seller of travel bags and accessories,

clothing, and related items, and Wenger S.A. over Swiss Brand's right to use its marks. Swiss Brand alleges that this action also implicates its rights under its federal trademark registrations and applications seeking the registrations of its marks with the United States Patent and Trademark Office, which are opposed by Wenger. As to the relief sought, Swiss Brand seeks the following declarations: (1) confusion, mistake or deception is not likely to result from Swiss Brand's continued use of its revised marks; and (2) Swiss Brand is entitled to maintain certain trademark registrations and to secure registration of the marks depicted below[1]:



The dispute between the parties began in April 2015 when Wenger filed a Petition for Cancellation with the Trademark Trial and Appeal Board, seeking cancellation of two of Swiss Brand's marks as they were likely to cause confusion with the following Wenger marks:

| Mark | U.S. Reg. No. & Reg. Date |
|---|---|
| (cross logo) | 3,820,133 - July 20, 2010 |
| (cross logo) | 4,301,579 - March 12, 2013 |
| (red cross logo) | 4,024,369 - September 13, 2011 |

---

[1] In its complaint, Swiss Brand specifically requests a declaration that it is entitled to maintain U.S. Registration Nos. 4,068,183 and 4,369,953 and that it is entitled to secure registration of the marks shown in U.S. Trademark Ser. Nos. 87/581,407, 87/581,410, 87/581,385, and 87/487,910.

Thereafter, in June and August 2017, Swiss Brand sought to register modified versions of its cross logo and Original Swiss Brand and Design Mark with the United States Patent and Trademark Office. This time, in May 2018, Wenger filed a Notice of Opposition with the Trademark Trial and Appeal Board, claiming that the newly revised marks were also likely to cause confusion with certain Wenger marks, plus the following additional marks:

| Mark | U.S. Reg. No. & Reg. Date |
|---|---|
| ⊕WENGER | 3,291,271 - September 11, 2007 |
| ⊕WENGER | 3,405,840 - April 1, 2008 |

Swiss Brand alleges that the parties have been engaged in settlement discussions since 2015, which ultimately prompted Swiss Brand to transition to its revised marks. In October 2018, Swiss Brand filed a motion with the Trademark Trial and Appeal Board, seeking to amend the marks in the registrations subject to Wenger's opposition in 2015. Swiss Brand's transition to its revised marks was completed in 2019.

According to the complaint, the parties were on the cusp of a settlement agreement in early 2019. But those hopes were dashed when Wenger's counsel informed Swiss Brand's counsel that Wenger representatives observed certain Swiss Brand products at a trade show, prompting them to lodge objections to the Swiss Brand marks and forego a possible settlement. As alleged, the trade show caused Wenger to apparently switch gears, from participating in settlement negotiations to seemingly collecting evidence of Swiss Brand's objectionable marks, with "at least one [Wenger] representative [] approach[ing] Swiss Brand's display booth and [] photographing the Swiss Brand product samples, demand[ing] a catalog showing Swiss Brand products, and express[ing] his objection to Swiss Brand's use of the [] marks."

As Swiss Brand alleges, by the end of 2019, the relationship between the parties had reached a markedly different phase, with Wenger's counsel reiterating Wenger's objection to the Swiss Brand marks and providing photos of the allegedly offending marks to Swiss Brand's counsel. Swiss Brand included a copy of the images sent by Wenger's counsel to Swiss Brand's counsel in its complaint, alleging that Wenger objected to Swiss Brand's use of the following marks:



Moreover, in February 2020, Wenger's counsel notified Swiss Brand's counsel that Wenger had filed a complaint for trademark infringement against a third party based upon the use of the third party's registered marks, which feature a cross design over a red background. Wenger's counsel also provided a copy of that complaint to Swiss Brand's counsel.

In this action, Swiss Brand brings a one-count declaratory judgment complaint against Wenger based on its "real and reasonable apprehension that it will be sued for trademark infringement if it introduces new products bearing the objected-to marks in commercial quantities into the U.S. market." Swiss Brand alleges that this real and reasonable apprehension is based on Wenger's rejection of a draft settlement agreement, the trade show confrontation, objections to the Swiss Brand marks communicated through counsel, and Wenger sending a copy of an infringement action it filed against a third party for the third party's use of its registered marks,

which allegedly also feature a cross design over a red background. As to Swiss Brand's fear and apprehension of introducing new products into the U.S. market, Swiss Brand specifically alleges that "at least one national retailer—aware of Wenger's objections—has already expressed its unwillingness to purchase Swiss Brand's products absent Wenger's express consent or a ruling in Swiss Brand's favor."

Wenger now moves to dismiss Swiss Brand's complaint for declaratory relief, arguing that the Plaintiff's single, declaratory judgment claim should be dismissed because the relief sought amounts to a request for an advisory opinion from this Court. Notably, a day before the Plaintiff's response to the motion to dismiss was due, the Defendant filed an 890-page filing purportedly including email communications between the parties spanning from May 2015 through February 2020. These emails were provided in support of the proposition that no case or controversy exists between the parties. In its response in opposition, the Plaintiff maintains that it has "establish[ed] that Defendant's course of conduct towards Plaintiff has created an 'actual controversy' between the parties under the Supreme Court's governing *MedImmune* standard."

## II. LEGAL STANDARD

When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### III. DISCUSSION

Wenger's motion to dismiss raises two issues. First, Wenger contends that Swiss Brand has failed to show that it has a real and reasonable apprehension of litigation. *See Windsurfing Intern. Inc. v. AMF Inc.*, 828 F.2d 755, 757-758 (Fed. Cir. 1987). Second, Wenger argues that the allegations in Swiss Brand's complaint do not amount to a case or controversy, as required under the Declaratory Judgment Act. 28 U.S.C. § 2201(a).

To the extent that Wenger requests this Court to apply *Windsurfing's* two-prong test, this Court declines to do so in light of the Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). As explained below, the Court finds that the *MedImmune* standard applies to this case, and, given all the circumstances, the facts alleged in the complaint show the existence of a case or controversy between the parties to this action.

**A. The Supreme Court's *MedImmune* standard governs whether there is a case or controversy in a declaratory judgment action in a trademark case in federal court.**

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

The Supreme Court in *MedImmune* noted that, in order for a declaratory judgment action to satisfy the case or controversy requirement, its prior decisions "required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune*, 549 U.S. at 127 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227,

6

240-241 (1937)). The Court then reiterated the case or controversy inquiry as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

In its motion to dismiss, Wenger cites *Marrero* for the proposition that "[w]hether an actual case or controversy exists in a declaratory judgment action involving trademarks requires a two-part inquiry": (1) "the declaratory plaintiff must have a real and reasonable [apprehension] of litigation"; and (2) "the plaintiff 'must have engaged in a course of conduct that brought it into adversarial conflict with the declaratory defendant.'" *Marrero Enters. of Palm Beach v. Estefan Enters.*, No. 06-81036, 2008 U.S. Dist. LEXIS 33027, at *2-3 (S.D. Fla. Apr. 22, 2008) (internal citations omitted). As to the first prong of the test, the district court in *Marrero* cited to the Federal Circuit's decision in *Windsurfing Intern. Inc. v. AMF Inc.*, 828 F.2d 755, 757-758 (Fed. Cir. 1987) (applying real and reasonable apprehension of litigation test), which predates *MedImmune*.

According to Swiss Brand, since *MedImmune*, a "more lenient legal standard" now exists for meeting the Declaratory Judgment Act's case or controversy requirement. *See Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test.")[2]; *see also Micron Tech. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008) ("Thus, in place of the reasonable threat of imminent suit test, the Supreme Court [in *MedImmune*] required a showing of whether the facts alleged under all the circumstances show that there is a substantial controversy

---

[2] In *Sandisk*, the Federal Circuit noted that, in *MedImmune*, the Supreme Court held that the Federal Circuit's prior two-part test's "reasonable apprehension of suit" requirement conflicted with prior precedent: *Aetna Life Insurance*, 300 U.S. 227 (1937) and *Maryland Casualty*, 312 U.S. 270. *Sandisk Corp.*, 480 F.3d at 1379 (citing *MedImmune*, 549 U.S. at 132 n. 11).

between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (internal quotations and citations omitted).

Based on the authorities cited by the parties, the Court finds that the reasonable apprehension of suit test has been replaced by the more expansive (jurisdiction conferring) *MedImmune* standard, which requires a consideration of "all the circumstances" when deciding whether a controversy exists. *See Harris Corp. v. Fed. Express Corp.*, 670 F. Supp. 2d 1306, 1309 (M.D. Fla. 2009) ("Subsequent cases from the Federal Circuit have recognized that the Court's opinion in *MedImmune* constitutes a rejection of the more limited apprehension-of-suit test.") (citing *Sandisk Corp.*, 480 F.3d at 1380). This Court acknowledges that at least one court has recognized that the viability of the reasonable apprehension of suit test has not been addressed in the context of a trademark declaratory judgment action, as *MedImmune* involved a patent declaratory judgment suit. *See Mandala v. Tire Stickers, LLC*, No. 6:19-cv-1468, 2020 WL 4743041, at *6 (M.D. Fla. May 27, 2020) (noting that the Eleventh Circuit and other district courts in the Middle District of Florida have not ruled on this issue). In *Mandala*, in a report and recommendation, the court surveyed other courts' resolution of this issue, noting that "the Second, Fifth, Ninth, and Tenth Circuits have applied *MedImmune* in trademark declaratory judgment actions." *Id.* (collecting cases). Ultimately, in *Mandala*, "[i]n the absence of guidance from the Eleventh Circuit, [the court] [] follow[ed] the unanimous approach taken by the Court of Appeals that have examined the issue so far" and applied *MedImmune's* standard for determining whether an actual controversy existed in that trademark declaratory action. *Id.*

As to district courts in the Southern District of Florida, as noted in *Mandala*, "[t]here appears to be some dissonance within the Southern District of Florida," as some cases appear to apply the *MedImmune* standard, while others continue to apply the two-prong test from

8

*Windsurfing*. *Mandala*, 2020 WL 4743041, at *6 n.6. *Compare Geltech Sols., Inc. v. Marteal, Ltd.*, No. 09-CV-81027, 2010 WL 1791423, at *3 (S.D. Fla. May 5, 2010) (reading *MedImmune* as "supplant[ing] the previous 'apprehension of suit' test for declaratory judgment jurisdiction" but noting that "threats of suit and communications between the parties do still play a key role in determining whether their interests are sufficiently adverse to permit declaratory relief") *with Gross v. Guzman*, No. 11-23028-CIV, 2012 WL 12863969, at *4 (S.D. Fla. July 5, 2012) (applying *Windsurfing's* two-prong test).

To date, it does not appear that the Eleventh Circuit has provided any guidance on the issue, but it appears that the majority view, as followed in the Second, Fifth, Ninth, and Tenth Circuits, is that the *MedImmune* standard governs whether there is a case or controversy under the Declaratory Judgment Act in a trademark declaratory action. *Mandala*, 2020 WL 4743041, at *6.

Accordingly, this Court finds that the *MedImmune* standard applies in this case when determining, under all the circumstances, whether a case or controversy exists between the parties in this declaratory judgment, trademark case*.*

**B. Based on the authorities and arguments made here, and, at this stage in the proceedings, where the Court assumes the allegations in the complaint to be true, a case or controversy exists between the parties.**

Swiss Brand claims that "this is a textbook case for declaratory relief under the *MedImmune* standard." In support of this proposition, Swiss Brand cites *HIS IP, Inc. v. Champion Window*, 510 F. Supp. 2d 948, 956 (M.D. Fla. 2007) (denying motion to dismiss and finding case or controversy existed where defendant "sent correspondence to [plaintiff] suggesting it would sue if its concerns 'could not be settled on an amicable basis'").

In *Champion Window*, where the district court applied the *MedImmune* standard, "[the defendant's] course of conduct implie[d] the threat of suit" when the defendant sent

9

correspondence to the plaintiff "suggesting it would sue if its concerns 'could not be settled on an amicable basis.'" 510 F. Supp. 2d at 956. There, the district court noted that "[t]he Supreme Court has recently instructed that in situations where the plaintiff's actions to avoid imminent injury are coerced by threatened enforcement of a private party, lower federal courts 'have long accepted jurisdiction in such cases.'" *Id.* (citing *MedImmune*, 549 U.S. at 130). Notably, the district court in *Champion Window* considered the defendant's opposition in corresponding Trademark Trial and Appeal Board proceedings in conjunction with the defendant's letter to the plaintiff. Wenger did not address *Champion Window* in its reply.

In its reply, Wenger contends that "[r]eference by [Swiss Brand] to a third party complaint in the settlement discussions is intentionally and completely misconstrued by [Swiss Brand]" as "Wenger was showing [Swiss Brand] examples of third party usage different from [Swiss Brand] usage as a directive of what could and could not be the basis for settlement in further discussions to resolve issues." (D.E. 18 ¶ 6). However, Wenger does not cite any support for this proposition or whether this was discussed or mentioned in its 890-page filing.

At this stage in the proceedings, the Court must accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc.*, 795 F.2d at 953. In relevant part, Swiss Brand's complaint includes the following factual allegations: "[A]s recently as February 14, 2020, counsel for Wenger notified counsel for Swiss Brand that Wenger filed a complaint for trademark infringement against a third party based upon use of the third party's registered marks, which feature a cross design over a red background" and that Wenger sent Swiss Brand a copy of the complaint against the third party. As a result of Wenger's "rejection of the draft settlement agreement," "the confrontation at the trade show," "the objections subsequently communicated through counsel," and the transmittal of the third-party complaint recently filed by Wenger against a third party for

trademark infringement, Swiss Brand has "a real and reasonable apprehension that it will be sued for trademark infringement if it introduces new products bearing the objected-to marks in commercial quantities into the U.S. market." Moreover, Swiss Brand is seeking a declaration that "confusion, mistake or deception [are] not likely to result from [its] continued use of the Swiss Brand Marks" and claims that "at least one national retailer—aware of Wenger's objections—has already expressed its unwillingness to purchase Swiss Brand's products absent Wenger's express consent or a ruling in Swiss Brand's favor."

Thus, based on the facts alleged, under all the circumstances, it appears that there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. This case is similar to *Champion Window*, which Wenger did not address or distinguish in its reply. Notably, like the defendant in *Champion Window*, here, Wenger has filed an opposition in proceedings before the Trademark Trial and Appeal Board. While Swiss Brand does not allege that Wenger would sue if its concerns "could not be settled on an amicable basis," under all the circumstances alleged in the complaint, the Court finds that "[Wenger's] course of conduct implies the threat of suit." *Champion Window*, 510 F. Supp. 2d at 956. As alleged, Wenger refused to enter a settlement agreement with Swiss Brand, objected to its marks by correspondence between the parties' respective counsel (and at a tradeshow), and opposed Swiss Brand's applications that are pending before the Trademark Trial and Appeal Board. The "immediacy and reality" of this substantial controversy, where the parties have adverse legal interests, is further elucidated by the allegation that at least one national retailer has expressed its unwillingness to purchase Swiss Brand's products until Wenger consents or Swiss Brand obtains a ruling in its favor.

The cases cited by Wenger are distinguishable. In the declaratory judgment action in *Marrero*, the district court noted that the plaintiff's nightclub still used the protected mark, the name "Coco Bongo," on Thursday nights. 2008 U.S. Dist. LEXIS 33027, at *4. As a result, the district court reasoned that the defendant's amended answer, affirmative defenses, and counterclaim depended on it proving that it had "a protectable right" as it relates to "Bongo." *Id.* The district court further reasoned that the plaintiff was "under the apprehension of [an] imminent lawsuit, because [the plaintiff] claim[ed] it continue[d] to use the name 'Coco Bongos' on Thursday nights." *Id.* The district court also characterized the defendant's conditional motion for voluntary dismissal without prejudice of its amended counterclaim as "quixotic," as it "read[] more like a failed settlement proposal rather than a request for judicial relief," given that its motion for voluntary dismissal of its counterclaim was conditioned on the Court granting its motion to dismiss based on lack of subject matter jurisdiction. *Id.* at *6.

As it relates to *Marrero*, in its motion to dismiss, Wenger includes a single sentence discussing that case, stating as follows: "Even though the Court in *Marero* (sic) found it 'quixotic' that a case of a failed settlement proposal was alleged, questions of fact required determination for further action. Here we do not even have a failed settlement proposal but a continuing settlement discussion." As previously noted, in *Marrero*, the district court characterized the defendant's conditional motion for voluntary dismissal without prejudice as "quixotic" and reading more as a "failed settlement proposal." *Marrero*, 2008 U.S. Dist. LEXIS 33027, at *6. No such motion exists here. While Wenger has not responded to the Swiss Brand's complaint or filed a counterclaim, like the plaintiff's use of the protected mark in *Marrero*, here, Swiss Brand maintains that it has a right in its marks, which Wenger has objected to. Additionally, *Marrero* is also distinguishable because the district court there applied *Windsurfing's* two-prong test, not *MedImmune's* standard.

Wenger also cites to *Miami Tech, Inc. v. Perez*, No. 13-cv-21681, 2013 U.S. Dist. LEXIS 119442, at *4 (S.D. Fla. Aug. 22, 2013) (granting defendant's motion to dismiss plaintiff's declaratory judgment action where the plaintiff "failed to allege that [d]efendant's [p]atent infringed upon any patent owned by [the plaintiff]") and *Nationwide Indus. v. D & D Techs. (USA), Inc.*, No. 8:12-cv-2372, 2014 U.S. Dist. LEXIS 13068, at *8-9 (M.D. Fla. Jan. 30, 2014) (granting motion to dismiss and finding no case or controversy existed based, in part, on a cease and desist letter that did not "expressly threaten litigation" and that did not accuse the plaintiff of any actionable conduct on the part of the plaintiff, such as a trademark violation). These cases are also distinguishable.

In *Perez*, the district granted a motion to dismiss in a declaratory judgment, patent case because the plaintiff's complaint failed to seek a declaration that the defendant's patent was invalid and, apparently, only sought "redress for [d]efendant's procedural misconduct before the United States Patent and Trademark Office." 2013 U.S. Dist. LEXIS 119442, at *5. Thus, *Perez* is distinguishable because, here, Swiss Brand seeks a declaration that its marks are not likely to cause confusion, mistake or deception.

As to *Nationwide Industries*, the district court found that "[n]otwithstanding that the parties are competitors and have been engaged in litigation in the past, [p]laintiff's apprehension of being embroiled in yet another lawsuit brought by [d]efendants is simply not sufficiently immediate or definite to constitute a substantial continuing controversy between the parties warranting declaratory relief." 2014 U.S. Dist. LEXIS 13068, at *5. The district court stated that "the cease and desist letter" there "remain[ed] the primary focus," as that letter did not "expressly threaten litigation, did not expressly accuse the plaintiff of "false advertising or violating the Lanham Act" or include any accusation involving the plaintiff's "copyright infringement, trademark violation,

13

or any actionable conduct on the part of [p]laintiffs." *Id.* at *8. As a result, the district court reasoned that "[a]t most, the letter amount[ed] to nothing more than a competitor's demand for information regarding [p]laintiff's products, testing results and warranties" and "[t]he deadline for responding [in the letter] certainly imposed no actionable obligation on the part of [p]laintiff." *Id.* at *8-9. Moreover, "[t]hat the attorney [for defendants] wrote that he would advise his clients 'to take all necessary and appropriate actions' if [p]laintiff did not respond d[id] not amount to a threat of litigation." *Id.* at *9.

While there is no express threat of litigation by Wenger here, *Nationwide Industries* is distinguishable because, based on the facts alleged in the complaint, Swiss Brand states that Wenger has objected to Swiss Brand's use of its marks in proceedings before the Trademark Trial and Appeal Board, Wenger's counsel advised Swiss Brand's counsel that Wenger objected to Swiss Brand's usage of its marks and "provided [plaintiff's] counsel for Swiss Brand images showing the trademark usage to which Wenger object[ed] [to]." Moreover, Swiss Brand alleges that "counsel for Wenger notified counsel for Swiss Brand that Wenger filed a complaint for trademark infringement against a third party based upon use of the third party's registered marks, which feature a cross design over a red background" (like Swiss Brand's). Additionally, Swiss Brand alleges that counsel for Wenger sent it a copy of the third-party complaint.

Accordingly, after considering all the circumstances, the Court finds that, taking the facts alleged as true, Swiss Brand has alleged a case or controversy as the dispute here is "'definite and concrete, touching the legal relations of parties having adverse legal interests'" and it is "'real and substantial" and seeks "specific relief through a decree of conclusive character, as distinguished from an opinion advising that the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (citing *Aetna*, 300 U.S. at 240-241); *see also Vanguard LED Displays, Inc. v.*

14

*Daktronics, Inc.,* No. 8:17-cv-2190-T-30TGW, 2017 WL 10295954, at *2 (M.D. Fla. Nov. 28, 2017) (denying motion to dismiss and finding case or controversy existed where defendant's course of conduct implied the immediate threat of suit, namely, defendant's counsel demanding that the plaintiff "immediately cease and desist from its infringement of the [] mark[,]" and the plaintiff sought a "declaration of non-infringement to conclusively establish that it [was] not infringing in the face of [defendant's] demands[,]" and the defendant filed an opposition in proceedings pending before the Trademark Trial and Appeal Board).

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, it is

**ADJUDGED** that Wenger's motion to dismiss is **DENIED**. Defendant Wenger shall file its answer and any affirmative defenses to Swiss Brand's complaint **by December 15, 2020**. The Court shall appoint John W. Thornton (jthornton@jamsadr.com) from JAMS as the mediator in this action by separate order.

DONE AND ORDERED in Chambers at Miami, Florida, this 1st of December 2020.

*/s/ Federico A. Moreno*
_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record